UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SANWAR AHMED, Individually and On Behalf of All Others Similarly Situated,

Plaintiffs,

v.

CITY OF NEW YORK,

Defendant.

17-cv-3044 (SHS)

OPINION & ORDER

SIDNEY H. STEIN, U.S. District Judge.

In 2017, plaintiff Sanwar Ahmed brought this class action pursuant to 42 U.S.C. §§ 1983 and 1988, alleging that defendant City of New York routinely seized mobile food-vending equipment from mobile food vendors who did not have proper permits without providing property vouchers to enable the vendors to retrieve their seized property, in violation of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and the laws of the State of New York. (*See* Dkt. No. 1 ¶¶ 1–4.)

The parties ultimately resolved their differences and submitted a Stipulation of Settlement (the "Settlement") (Dkt. No. 58-1) to the Court, which the Court approved as fair, reasonable, and adequate after conducting a fairness hearing (Dkt. No. 77). The terms of the Settlement provide for certain equitable relief plus a total settlement amount of $188,531 (the "Settlement Fund"), from which approximately 318 class members were entitled to claim $585 each prior to any supplemental distribution and from which lead plaintiff Ahmed was awarded $2,501 for his individual damages inclusive of an incentive award. (Dkt. No. 58-1 ¶¶ 25–28, 49, 51, 56–57.) After repeated outreach efforts by plaintiffs' counsel aimed at locating claimants, only 31 class members have come forward and received payment. (Dkt. No. 94-1 ¶¶ 4, 6, 9–21.) $155,030 of the $188,531 remains in the Settlement Fund. (*Id.* ¶¶ 6–7.) Plaintiffs now move for distribution of the $155,030 remaining amount, contending that no further class members can be feasibly located and proposing three non-profit organizations as *cy pres* designees to receive the remaining funds. (Dkt. No. 93; Dkt. No. 94 at 12–14.) The City of New York opposes plaintiffs' motion, contending that the funds should revert to the City rather than be distributed to plaintiffs' proposed *cy pres* designees. (Dkt. No. 97.) For the reasons that follow, the Court concludes that the remaining funds should revert to the City.

## I. The Settlement and the Unclaimed Funds

The Settlement provides that each class member who properly files a claim within twelve months after final court approval of the Settlement is entitled to receive $585 from the Settlement Fund. (Dkt. No. 58-1 ¶ 56.) Thereafter, any unclaimed Settlement Funds may be distributed pro rata to class members who made a valid claim up to an additional $415 per claimant. (*Id.* ¶ 57.) Those pro rata distributions have been made. (*See* Dkt. No. 94-1 ¶ 5.)

Following this supplemental distribution of up to $415 to each claimant, the Settlement requires "[c]ounsel for both Parties [to] negotiate in good faith in an effort to agree upon distribution of [any] remaining Settlement Funds." (Dkt. No. 58-1 ¶ 58.) The Settlement further provides as follows:

> Within thirty (30) days of either: (a) an agreement on the distribution of the remaining Settlement Funds; or (b) a determination that counsel for both Parties cannot agree on distribution of the remaining Settlement Funds despite good faith negotiations, Plaintiffs' Counsel will submit an application to the District Court for approval of distribution of the remaining Settlement Funds. Should there be no agreement, Defendants' Counsel will have thirty (30) days from the date of Plaintiffs' Counsel's submission of claims to the District Court in which to submit an objection and proposal for alternative distribution of the remaining Settlement Funds.

(*Id.* ¶ 59.)

Because only a small fraction of Settlement Funds were claimed during the twelve-month claim submission period, the Claims Administrator, as noted above, issued a supplemental distribution in the amount of $415 to each class member who submitted a valid claim. (*See* Dkt. No. 94-1 ¶ 5.) Notwithstanding, and as noted above, $155,030 remains in the Settlement Fund to date. (*Id.* ¶ 6.)

Plaintiffs contend that no further class members can be feasibly located (Dkt. No. 94 at 12–13), and the City does not argue otherwise. The parties are at an impasse regarding what should be done with the unclaimed funds. Pursuant to the Settlement, each party has set forth its proposal on how to deal with the unclaimed funds. Plaintiffs propose that the funds be given to their three *cy pres* designees; the City proposes that the funds revert to it.

## II. Legal Standard

A district court has "broad discretionary powers" regarding "equitable decrees involving the distribution of any unclaimed class action fund." *Van Gemert v. Boeing Co.*, 739 F.2d 730, 737 (2d Cir. 1984). "When deciding how to distribute unclaimed

funds, the court must make 'a context-specific, discretionary determination.'" *Gayle v. Harry's Nurses Registry, Inc.*, No. 07-cv-4672, 2018 WL 11486496, at *1 (E.D.N.Y. Nov. 6, 2018) (quoting *Jones v. Nat'l Distillers*, 56 F. Supp. 2d 355, 358 (S.D.N.Y. 1999)).

There are generally four ways of distributing unclaimed settlement funds. A court may order that the unclaimed funds: (1) revert to the defendant; (2) be redistributed among the class members who did file claims; (3) escheat to the government;[1] or (4) be given to one or more charities via a *cy pres* distribution. 4 Newberg and Rubenstein on Class Actions § 12:28 (6th ed. June 2026 Update).

No party advocates in favor of escheatment, and every participating class member has already received the maximum supplemental distribution provided for under the Settlement. Thus, the Court must choose between the reversion of the funds to the City, on one hand, or a distribution to appropriate *cy pres* recipients on the other.

## III. Discussion

Giving due regard to the circumstances of this action and the nature of plaintiffs' claims, the Court concludes that it is most equitable for the remaining Settlement Funds to revert to the City.

As the U.S. Court of Appeals for the Second Circuit recognized in *Van Gemert*, unclaimed settlement funds may be returned to a defendant where withholding them would serve little deterrent purpose because the defendant acted without malice or bad faith and had relied on the advice of others. *See Van Gemert*, 739 F.2d at 737. Here, plaintiffs accuse the City of seizing unpermitted mobile-food vending equipment from mobile food vendors without providing property vouchers that would enable those vendors to later retrieve their seized property in violation of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and the laws of the State of New York. (Dkt. No. 58-1 at 1.) Although the City's failure to issue these vouchers may have been unlawful, there is no support whatsoever for the proposition that the City acted in bad faith or out of malice.

Moreover, the Court is satisfied that the aims of deterrence have already been fulfilled. In addition to having been made to actively defend this action, the City has now funded both an initial settlement payment and a supplemental distribution to each class member who properly filed a claim in this action. While amounts for plaintiffs'

---

[1] Escheatment occurs when unclaimed funds are directed to the state or federal treasury. 4 Newberg and Rubenstein on Class Actions § 12:31 (6th ed. June 2026 Update). Federal and state laws generally make escheat impermanent in that they establish procedures for claimants whose funds have escheated to seek recovery of those funds at a later date. (*Id.*)

attorneys' fees and expenses are yet to be determined, the Settlement provides that these are to be paid by the City and are in addition to the money in the Settlement Fund. (*Id.* ¶¶ 68–72.)

The Settlement also obligates the New York City Police Department, along with certain other City agencies, to train their officers and employees on how to properly document and notice property seized from mobile food vendors, further reducing the chances of future violations. (*Id.* ¶¶ 25–28.) Moreover, as a public entity, the City is simply not subject to the same profit motive that would influence private defendants.

In addition, in selecting *cy pres* designees a court must assess whether the designees "reasonably approximate the interests of the class and the purposes of the litigation." *In re Citigroup Inc. Sec. Litig.*, 199 F. Supp. 3d 845, 849 (S.D.N.Y. 2016). While the Court does not doubt that the three non-profit organizations proposed by plaintiffs provide important services to deserving individuals, it is unconvinced that these organizations "reasonably approximate" the interests of the class.

Taking into consideration these factors, the Court concludes in its discretion that the unclaimed Settlement Funds should revert to the City.

## IV. Conclusion

For the foregoing reasons, the Court concludes that the equities favor a reversion of the unclaimed Settlement Funds to the City of New York. Accordingly, plaintiffs' motion for a *cy pres* distribution (Dkt. No. 93) is denied, and all unclaimed funds shall revert to the City.

Dated: New York, New York
September 11, 2026

SO ORDERED:

Sidney H. Stein, U.S.D.J.